IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALICIA MOORE, | ) |
|     Plaintiff, | ) ) ) ) |
| v. | ) ) Case No. 23-cv-00154-SEH-SH |
| THE METROPOLITAN TULSA TRANSIT AUTHORITY, et al., | ) ) ) ) |
|     Defendants. | ) |

### OPINION AND ORDER

Before the Court is Plaintiff's motion to disqualify attorney Steven Hickman and his firm from representing an opposing party. The Court finds that Hickman and his firm never formed an attorney-client relationship with Plaintiff, but that she did consult with them as a prospective client. However, the Court finds the information Plaintiff provided was generally known and could not be significantly harmful to her. The Court finds no breach of applicable ethical standards and otherwise finds no basis to disqualify Hickman and his firm from representing a party adverse to Plaintiff.

### Procedural Background

On April 17, 2023, Plaintiff Alicia Moore ("Moore"), *pro se*, filed this suit against the Metropolitan Tulsa Transit Authority (the "MTTA") and its drivers' union, ATU, Local 892 (the "Local 892").[1] (ECF No. 1.) Moore claims the MTTA and Local 892

---

[1] Moore initially named the MTTA as "Tulsa Transit," but the name was later corrected to the Metropolitan Tulsa Transit Authority. (ECF Nos. 63–64.) Moore initially named Local 892 as "Union," but its name was later corrected to ATU, Local 892. (ECF Nos. 68–69.)

discriminated against her on the basis of race, age, retaliation, and her non-Tulsa origins.[2] (*Id.* at 1–2.[3]) Steven R. Hickman of the firm Frasier, Frasier & Hickman, LLP ("FFH") filed an entry of appearance in this case on August 24, 2023, as counsel for Local 892. (ECF No. 14.) Hickman also later appeared as counsel for Camilla Hunter, who was president of Local 892. (ECF No. 35–36.)

Moore has now filed a motion to "remove" FFH and Hickman (ECF No. 45), which the Court has interpreted as a motion to disqualify Hickman and his firm from representing Local 892 in this case. Moore asserts that she and other individuals had previously contacted FFH about their complaints against the MTTA; that she told them information she had against the MTTA; and that Hickman and FFH failed to disclose they worked for the MTTA. (*Id.* at 1–2.) Moore also appears to take issue with some of the actions and statements Hickman has made since he appeared in this case as counsel for Local 892. (*Id.* at 2–7.) District Judge Sara E. Hill referred Moore's motion to the undersigned for an opinion.[4] (ECF No. 74.)

---

[2] Plaintiff attempted to file an amended complaint on behalf of herself and other individuals on April 24, 2024. (ECF No. 57.) That amended complaint was stricken on April 30, 2024, because it was filed out-of-time, without leave or consent, and in violation of the local rules. (ECF No. 58.) A few days later, Plaintiff filed another purported amended complaint on behalf of herself alone, but named several new defendants. (ECF No. 60.) That amended complaint is the subject of pending motions to strike. (ECF Nos. 62, 65, 66, 70.) For purposes of this motion, the Court treats Plaintiff's original complaint as the operative complaint.

[3] References to page numbers refer to the ECF header.

[4] The title of Moore's motion also states that she is suing for malpractice (ECF No. 45 at 1), and Hickman and FFH have moved to dismiss "[t]o the extent that Docket No. 45 purports to be a claim for malpractice" (ECF No. 54 at 1). The motion to dismiss has been referred to the undersigned (ECF No. 74) and will be the subject of a separate report and recommendation.

The Court held an evidentiary hearing on Plaintiff's motion to disqualify on August 14, 2024. (ECF No. 81.)

### Factual Background

Based on the evidence presented at the hearing, the Court makes the following factual findings. These findings relate only to evidence the Court has determined to be relevant to the pending motion. The Court will not recite all of the facts presented at the hearing.[5]

In 2022 or 2023, Moore approached the bar association about her complaints against her employer and persons who worked there. The bar association referred her to various attorneys, including FFH. The other attorneys she reached out to either told her they had a conflict of interest or did not respond to her inquiries. Moore then contacted FFH.

Moore first contacted FFH on March 30, 2023.[6] Moore visited FFH's office as a "walk-in"; she did not have an appointment. On that date, she saw John Flippo ("Flippo"), a divorce attorney, who was serving on "phone duty," which included taking calls and meeting walk-ins. FFH does not provide any documents or disclaimers to walk-ins.

---

[5] For example, some of the testimony at the hearing veered into the merits of Moore's complaints against persons at the MTTA, as well as her complaints about a letter Hickman sent her (after he appeared in this case as counsel for Local 892) where he pointed out problems with her summons to the MTTA (ECF No. 77 at 17, 24).

[6] Moore testified that this contact was in 2022. However, her motion to disqualify states that she visited the firm and then had two phone conversations with Hickman in March–April 2023. (ECF No. 45 at 1.) Moreover, the initial complaint includes materials from late 2022 and early 2023, and Moore's testimony was that the materials she presented to FFH were the same materials she had provided to the EEOC or included with her filing in this case. Hickman referred to FFH's records when determining when the visit and calls occurred. Meanwhile, Moore's testimony as to what occurred tended to be vague. The Court finds Hickman's testimony as to the timing and nature of the contacts to be more credible.

Moore had with her a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") and other documents. These appeared to relate to complaints she had against the MTTA. Moore also provided information about her belief that she was being harassed on the job and having her hours cut. This included information Moore had already provided to the human resources department at the MTTA. Moore also showed Flippo her 2020 driver trophy from the MTTA. Moore testified she believed Flippo was laughing at her during this meeting.

FFH also contacted the EEOC to get a copy of Moore's claim. Flippo wrote a memo stating that Moore came in with a notice of right to sue. He sent the memo to Frank Frasier ("Frasier") and Hickman, asking them to call and follow up with Moore. Hickman believes the meeting with Flippo was 30 minutes or less, but FFH does not have records of the exact time spent with Moore. Plaintiff believes this conversation lasted between 30 minutes to one hour.[7]

On March 31, 2023, Frasier called Moore back. Frasier did not hear anything that indicated a potential lawsuit, and he told Moore that FFH was not interested. Hickman believes this call was relatively short. Moore's testimony lacked details regarding this call, and it is not clear that any of her time estimates relate to this call. To the extent Moore testified that this conversation lasted 30 minutes to 1.5 hours, the Court does not find that testimony credible.

---

[7] Moore testified that the first meeting was over the phone and lasted 30 minutes to 1 hour. The Court, however, has credited Hickman's testimony that the first meeting was the walk-in visit with Flippo. Moore testified that the second meeting was in-person and lasted 30 minutes to 1.5 hours.

A few days after Frasier's call, Hickman called Moore.[8] Hickman testified that he always tells employees in such calls that FFH represents unions (including Moore's union), and that FFH does not sue unions, only companies. Hickman also has a standard spiel he uses in employment cases, where he explains at-will employment; explains that claims can be made for age, sex, race, religion, or handicap; and asks questions to determine whether the employee's complaints relate to those categories. If he determines an employee does not have a case, he generally does not say that directly; instead, he says that FFH does not hear a case in what is being said and is not interesting in handling the claim.

Hickman recalls that most of Moore's complaints related to MTTA management mistreating her, but she did mention complaints about Local 892. Moore's EEOC charges against MTTA did not mention any protected classes, and, in their call, Hickman does not recall Moore having anything to add about protected classes. While a union employee might have a grievance against their employer that can go to arbitration, there still is no lawsuit to be filed. Moore recalls Hickman asking her questions about why she was being harassed—to which she responded it was due to her writing people up—and that Hickman told her she was not saying anything he wanted to hear. Hickman recalls telling her he did not see a case here. Both agree the call ended soon after that and that the call was fairly short. Moore estimates it was 15–20 minutes. The call with Hickman was the last time Moore spoke to anyone at FFH before filing the lawsuit on April 17, 2023.

---

[8] In his affidavit accompanying the response to Moore's motion, Hickman states that he and Frasier were then unaware that both of them had called Moore based on Flippo's memo. (ECF No. 55-1 ¶ 5.)

The paperwork Moore shared with the attorneys at FFH was the same paperwork she had filed with the EEOC and that she would eventually file in this case. The incidents Moore discussed with attorneys at FFH were the same incidents described in that paperwork. The Court heard no testimony that Moore discussed anything confidential or any litigation or settlement strategy with anyone at FFH. Moore claims that FFH has used the information she provided against her, but she does not refer to any specific information. Instead, it appears Moore is merely upset that FFH appeared as counsel for union president, Camilla Hunter, and filed a motion to dismiss any claims made against Hunter.[9] Moore believes that she contacted FFH "first" and that the firm chose Hunter over her.

FFH has represented unions since the 1950s and has represented Local 892 since the 1980s. It is common for unions to refer their members to FFH if they need legal services. When FFH learns an employee has a complaint about the union, they do not represent such employees but send them elsewhere. If the complaint is against an employer, FFH has no problem suing the employer if it believes there is a claim there.

Moore testified she did not know that FFH represented Local 892 when she consulted with them, but she appeared to know that the union referred employees there. At times, it appears that Moore believed FFH should have been representing her because of her payment of union dues over the years.

---

[9] Hunter is not named as a defendant in the original complaint. (ECF No. 1.) However, on December 8, 2023, Moore filed a proof of service, showing that a summons was served on Camilla Hunter on November 30, 2023. (ECF No. 37.) It is not clear to what summons this proof of service refers. On December 4, 2023, Hickman filed a motion to dismiss "any claim" made against Hunter. (ECF No. 36.)

Moore also believes that FFH represents the MTTA, but there is no evidence supporting that belief. The Court finds credible Hickman's testimony that FFH does not, and has never, represented the MTTA.

## Analysis

### I. Standard of Review

A court has "broad discretion" in determining whether an attorney should be disqualified. *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1211 (10th Cir. 2000). The party seeking disqualification—here Moore—bears the burden of proving its necessity. *See Columbia Mut. Ins. Co. v. Baloru Enterprises, LLC*, No. 22-CV-00444-JDR-SH, 2024 WL 1654920, at *2 (N.D. Okla. Apr. 17, 2024) (collecting cases).

Two sources of authority govern motions to disqualify in federal court. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994). First, attorneys are bound by a court's local rules, *id.*, which in this case means that attorneys are expected to conduct themselves in line with the Oklahoma Rules of Professional Conduct ("ORPC"). *See* LGnR 3-2; *see also* Okla. Stat. tit. 5, ch. 1, app. 3-a (setting forth the ORPC). Second, disqualification motions are decided by applying federal standards, which means they are "governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (citations and internal quotations omitted).

While the Court consults the ORPC, it is not bound by Oklahoma state courts' interpretation of those rules. *See Acct. Principals, Inc. v. Manpower, Inc.*, 599 F. Supp. 2d 1287, 1291 (N.D. Okla.). Even so, "it would arguably create difficulties for practitioners in Oklahoma [if federal courts were] to adopt an interpretation of [the ORPC] different from that adopted by the Oklahoma Supreme Court." *Weeks*, 230 F.3d at 1214 (Briscoe,

7

J., concurring). So, this Court will apply federal standards while also trying "to avoid any inconsistencies with state law that would create procedural difficulties for practitioners in Oklahoma." *Acct. Principals*, 599 F. Supp. 2d at 1291 (internal quotation marks omitted).

"Disqualification is not warranted automatically upon a finding that an attorney has violated a disciplinary rule." *Grant v. Flying Bud Farms, LLC*, No. 22-CV-1-TCK-CDL, 2022 WL 2955147, at *4 (N.D. Okla. July 26, 2022) (collecting cases). Instead, the Court considers "various factors, including prejudice to the moving party, as well as society's interest in ethical conduct, the prerogative of parties to choose their own counsel, and the hardship of disqualification." *Id.* (internal quotations omitted) (collecting cases). The court "must carefully balance the interest in protecting the integrity of the judicial process with the right of a party to have counsel of its choice." *State Farm Mut. Auto. Ins. Co. v. Dowdy ex rel. Dowdy*, 445 F. Supp. 2d 1285, 1287 (N.D. Okla. 2006). "Motions seeking the disqualification of opposing counsel are 'viewed with suspicion, and the Court must guard against the possibility that disqualification is sought to secure a tactical advantage in the proceedings.'" *Madden v. Elara Caring, LLC*, No. CIV-19-1178, 2021 WL 4301493, at *1 (W.D. Okla. Sept. 21, 2021) (quoting *Foltz v. Columbia Cas. Co.*, No. CIV-15-1144-D, 2016 WL 4734687, at *2 (W.D. Okla. Sept. 9, 2016)). Overall, disqualification is an "extreme sanction." *Weeks*, 230 F.3d at 1211.

II.   **Applicable Ethical Rules**

Moore's motion potentially invokes two different ethical rules—one concerning former clients and another governing treatment of prospective clients.

**A.     Rule 1.9**

ORPC 1.9 provides,

(a)     A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing.

. . .

(c)     A lawyer who has formerly represented a client in a matter . . . shall not thereafter:

  (1)     use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has been generally known; or

  (2)     reveal information relating to the representation except as these Rules would permit or require as respect to a client.

Okla. Stat. tit. 5, ch. 1, app. 3-a, Rule 1.9.  This Oklahoma rule is substantially the same as the ABA model rule.  *See* Mod. Rules Prof. Cond. § 1.9.

In deciding whether an attorney has violated this rule, the "threshold question" is "whether there was an attorney-client relationship that would subject a lawyer to the ethical obligations of preserving confidential communications." *Cole*, 43 F.3d at 1384.  This does not necessarily mean there must be an executed formal contract or the payment of fees; but the movant must show she submitted confidential information to a lawyer with the "reasonable belief" that the lawyer was acting as her attorney.  *Id.*  While the Court may consider the movant's subjective belief, "this belief is not sufficient to establish an attorney-client relationship." *Id.*  Instead, such belief must also be reasonable.  *Id.*

9

### B. Rule 1.18

Effective 2008, Oklahoma adopted ORPC 1.18, which is substantially identical to the new model rule adopted by the ABA in 2002.[10] *See* Mod. Rules Prof. Cond. § 1.18. Under ORPC 1.18,

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter except as provided in paragraph (d). . . .[11]

---

[10] Previously, some courts discussed what would now potentially be a "prospective client" situation in the context of a Rule 1.9 disqualification. *See, e.g., Green v. Montgomery Cnty.*, 784 F. Supp. 841, 845–48 (M.D. Ala. 1992); *see also id.* at 845 (citing *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978), for the proposition that "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result."). As such, courts should be careful when relying on pre-Rule 1.18 precedent that appears to endorse a looser test for formation of a former attorney-client relationship under Rule 1.9. The Court need not decide today whether this implicates the validity of the Tenth Circuit's finding in *Cole* (based on the ruling in *Westinghouse*) that an attorney-client relationship can be formed when a party shows "(1) it submitted confidential information to a lawyer and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney." 43 F.3d at 1384. In this case, there was no such reasonable belief. (*See* Section III, *infra*.)

[11] Subparagraph (d) applies to situations in which, *inter alia*, both the affected client and prospective client consent in writing to the lawyer's representation. ORPC 1.18(d). No party claims such consent occurred in this case.

10

Okla. Stat. tit. 5, ch. 1, app. 3-a, Rule 1.18. Rule 1.18 imposes distinct requirements based on the unique nature of such preliminary consultations. This is because a "lawyer's consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients." ORPC 1.18 cmt. [1].

First, for Rule 1.18 protections to apply, the prospective client must have actually consulted with the lawyer. *See* ORPC 1.18(a). "Not all persons who communicate information to a lawyer are entitled to protection under this Rule." *Id.* cmt. [2]. A person who "communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship" has not consulted and is not a prospective client. *Id.* However, "a consultation is likely to have occurred if a lawyer . . . specifically requests or invites the submission of information about a potential representation without clear and reasonably understandable warnings and cautionary statements that limit the lawyer's obligations . . . ." *Id.*

Second, if a consultation occurs, the lawyer cannot use or reveal the information the prospective client provided, except as allowed by ORPC 1.9. *See* ORPC 1.18(b). This means that the lawyer, however, can use information provided by the prospective client if it "has been generally known." *See* ORPC 1.9(c)(1).

Third, after such a consultation, the lawyer's future representations of others is partially limited. The lawyer cannot represent a client who is materially adverse to the prospective client in the same or a substantially related matter, but this limitation only applies if the lawyer received information from the prospective client that "could be

significantly harmful" to her in that matter. ORPC 1.18(c); *see also id.* cmt. [6]. Thus, "the mere fact that a prospective client consulted with a lawyer in a substantially related matter is not sufficient, alone, to disqualify the lawyer from a later matter." ABA Formal Op. No. 492 (June 9, 2020).

> Information may be "significantly harmful" if it is sensitive or privileged information that the lawyer would not have received in the ordinary course of due diligence; or if it is information that has long-term significance or continuing relevance to the matter, such as motives, litigation strategies, or potential weaknesses. "Significantly harmful" may also be the premature possession of information that could have a substantial impact on settlement proposals and trial strategy; the personal thoughts and impressions about the facts of the case; or information that is extensive, critical, or of significant use.

*In re Carpenter*, 2015 ND 111, ¶ 15, 863 N.W.2d 223, 230 (quoting Wisc. Formal Ethics Op. EF-10-03).

### III. Neither Hickman nor FFH Have Formerly Represented Moore

There is no evidence that Moore has ever formed an attorney-client relationship with Hickman or FFH. Instead, it is undisputed that FFH attorneys told Moore that they were not interested in representing her. Moore did not submit confidential information to an FFH lawyer with the reasonable belief that the lawyer was acting as her attorney. Indeed, there is no evidence Moore submitted any confidential information to FFH at all. Moore is, thus, not a former client of Hickman or FFH, and ORPC 1.9 does not apply.

### IV. Moore Was a Prospective Client, but Hickman and FFH May Still Represent a Party Adverse to Her

The evidence indicates that Moore did, in fact, "consult" with FFH about becoming a client in the same matter as this case. However, no lawyer at FFH received information from Moore that could be significantly harmful to Moore. In fact, no lawyer received any information from Moore that was not generally known. There is, therefore, no evidence

that Hickman or FFH have used any information provided by Moore in violation of ORPC 1.18(b). There is also no restriction on Hickman or FFH's ability to represent a client with interests materially adverse to Moore in this matter. The representation of Local 892 has not violated any ethical rules, and the Court need not proceed further in determining whether Hickman or FFH should be disqualified in this case.

### A.     Moore Was a Prospective Client

As a preliminary matter, the Court finds that Moore was a prospective client and that ORPC 1.18 applies. Moore did not unilaterally provide unsolicited information to FFH or Hickman after being warned not to. Instead, the evidence indicates that FFH does not provide any disclaimers or warnings to persons who come as walk-ins, like Moore did. *See* ORPC 1.18(a) & cmt. [2]. Indeed, it appears that attorneys from FFH asked Moore for additional information to determine whether or not she had a claim against her employer for which it might want to represent her. However, it also appears that, once Hickman obtained enough information to determine that FFH would not represent Moore, he informed her of this, and the call soon ended. *See* ORPC 1.18 cmt. [4] ("Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation.").

### B.     Hickman and FFH Are Not Prohibited from Representing a Client Adverse to Moore

Hickman and FFH represent Local 892 in this case. The Court finds that Local 892 is materially adverse to Moore, as Moore has filed a complaint naming Local 892 as a defendant. The Court further finds that this case is the same matter as the one on which Moore consulted with Hickman and FFH as a prospective client.

13

Even so, there is no prohibition on Hickman and his firm representing Local 892. Rule 1.18 only prohibits such a representation "if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter . . . ." ORPC 1.18(c). Here, Hickman and his firm received the same information that Moore had already provided in complaints to her employer and in her filing with the EEOC. She similarly included that information in her first filings in this case. There is no indication that Moore provided information that was sensitive or privileged or that related in any way to litigation strategy, settlement, Moore's financial position, confidential thoughts about the case, or anything else that would provide an advantage of any sort to an opposing party. *Xiao Hong Liu v. VMC E. Coast LLC*, No. 16 CV 5184, 2017 WL 4564744, at *4 (E.D.N.Y. Oct. 11, 2017) ("Courts have held that information is not 'significantly harmful' if it is public information, if it merely regards the history of the dispute, or if it is likely to be revealed at the moving party's deposition or in other discovery." (cleaned up)).

### C. Hickman and FFH Are Not Prohibited from Using or Revealing Information Provided by Moore

There is also no basis from which the Court can find that Hickman and his firm have improperly used the information provided by Moore. Rule 1.18 provides that, even when no attorney-client relationship results, "a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client." ORPC 1.18(b). Rule 1.9 provides that a lawyer cannot use a former client's information "to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has been generally known . . . ." ORPC 1.9(c)(1).

Here, all indications are that the information Moore provided to FFH was information that she has freely provided to others and that is, therefore, generally known. There is also no evidence that FFH has actually used any of the information to Moore's "disadvantage."

As such, there is no evidence of any violation of Rule 1.18.

## Conclusion

In the end, Moore's primary complaint against FFH and Hickman is that they refused to represent her in this case—not that they used the information she provided against her or that they have information that could be significantly harmful to her. Local 892 is entitled to the counsel of its choosing, and nothing prohibits FFH from representing Local 892 instead of Moore.

IT IS THEREFORE ORDERED that the *Motion to Remove Counsel Fraiser & Frasier & Steven Hickman* (ECF No. 45) is DENIED.

ORDERED this 30th day of September, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT